Lloyd W. HARTMAN et al., etc.,
Plaintiffs-Appellees,

v.

NORTH CENTRAL AIRLINES, Inc.,
Defendant-Appellant.

No. 11911.

United States Court of Appeals
Seventh Circuit.

March 5, 1957.

**860**

Jerry P. Belknap, Indianapolis, Ind., Marvin E. Klitsner, Milwaukee, Wis., Joseph E. Rapkin, Milwaukee, Wis., Raymond W. Gray, Jr., Indianapolis, Ind., Fairchild, Foley & Sammond, Milwaukee, Wis., Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., of counsel, for appellant.

Albert F. Grisard, Washington, D. C., William H. Krieg, Indianapolis, Ind., Henry C. Ryder, Indianapolis, Ind., Buschmann, Krieg, DeVault & Alexander, Indianapolis, Ind., of counsel, for appellees.

Before DUFFY, Chief Judge, and SWAIM and SCHNACKENBERG, Circuit Judges.

DUFFY, Chief Judge.

This is an action for declaratory judgment. Plaintiffs aver that by reason of certain alleged breaches of contract by defendant, plaintiffs are excused from performance of that contract.

Defendant, hereinafter referred to as North Central or defendant, and Lake Central Airlines, Inc., hereinafter called Lake Central, are local service air carriers subject to regulation by the Civil Aeronautics Board hereinafter called C.A.B. Roscoe, John V. and W. W. Weesner and their family-owned corporations, hereinafter called Weesners, owned substantially all the common capital stock of Lake Central in 1952 at which time they entered into a contract with North Central for the sale of such stock. On January 31, 1955, plaintiffs acquired such stock from Weesners subject to the rights, if any, of North Central under said contract.

Lake Central's certificate to its Route 88 had expired in 1952. C.A.B. was investigating whether the Weesners' management of Lake Central was honest, economical and efficient, so as to justify a renewal of Lake Central's certificate. A trial examiner of C.A.B. had found that the management had committed wilful violations of the Civil Aeronautics Act, 49 U.S.C.A. § 401 et seq., and that Lake Central was not financially able to operate. He found the Weesners unfit to continue in the aviation business and recommended Lake Central be not granted a renewal certificate because of the Weesners' unfitness.

C.A.B. set oral argument on the Lake Central certificate case for September 18, 1952. The Weesners realized the likelihood of refusal by C.A.B. to renew the Lake Central's certificate so long as their management of Lake Central continued. They thereupon endeavored to sell their Lake Central stock so that they could announce, at least, a sale contract on the date set for oral argument. On September 16 and 17, 1952, the Weesners and defendant negotiated the original contract, but that contract was not ratified. On October 16 and 17, 1952, the contract was redrafted, executed and ratified. At both negotiating sessions the Weesners and defendant had the assistance of counsel, and the contract, as drafted, was the joint work of counsel for both parties.

On October 1, 1952, defendant filed with C.A.B. (docket No. 5770) for approval of its acquisition of control of Lake Central pursuant to the first contract, and thereafter, under the second contract. C.A.B. noted that in view of the examiner's findings it could not make the required finding that Lake Central was fit, willing and able to operate as an air carrier. However, it took notice of the proposed contract with defendant and that if said contract were approved,

there would be a basis for the necessary statutory finding. C.A.B. suggested a voting trust as an interim arrangement to divest Weesner control, and this was done. Thereafter, on December 30, 1952, C.A.B. renewed Lake Central's certificate for a period terminating December 30, 1954.

The contract between Weesners and defendant was conditioned on C.A.B. approval of the proposed stock acquisition. The purchase price was to be based on the net book value of the Lake Central stock as adjusted by an award to be made by C.A.B. in Lake Central's initial permanent mail rate settlement. At the time the contract was negotiated, the parties discussed the time sequence in which C.A.B. could be expected to issue the two orders, and they were of the belief that the decision in Docket 5770 would precede a determination in the Lake Central mail rate case. The contemplated time sequence was the best judgment of the parties, but it was not a condition of the contract.

On November 13, 1952, Ozark Lines, Inc. filed an application with C.A.B. for Lake Central's routes, and a motion to intervene in Docket 5770. On March 10, 1953, Transport Airgroup, Inc., a newly organized air carrier, likewise filed an application for Lake Central's routes, and moved to intervene in Docket 5770. On the same day a pre-hearing conference was held in Docket 5770 and there were in attendance W. W. Weesner as representative of the Weesner interest, and the attorneys representing Lake Central, Ozark, Transport and defendant. Ozark and Transport each announced it wanted to be considered as a potential purchaser of the Lake Central stock, and each wanted to obtain a certificate to Lake Central's routes. They asked that their applications and petitions be consolidated into Docket 5770. Defendant's counsel opposed all of these proposals and asked that Docket 5770 be limited to passing on the contract. He stated, however, that in view of the Ozark and Transport proposals, defendant would have to file a protective application of its own for the

Lake Central routes, but he specified such application was to be considered only in the event that defendant's application for approval of the contract acquiring Lake Central's stock was denied or disapproved. W. W. Weesner, who was present representing the Weesner interests, did not object. Defendant filed its application for Lake Central's routes six days later. The application was unconditional in form. Defendant did not know whether the other route applications would be consolidated, but if they were, it wanted its application likewise consolidated.

On April 6, 1953, Transport filed a petition with C.A.B.: 1) to allow it to be considered a potential purchaser of the Weesner stock; 2) to grant it a certificate to Lake Central's routes; and 3) to consolidate into Docket 5770 all applications for Lake Central's routes. On April 7, Ozark filed a petition to consolidate into Docket 5770 its application for Lake Central's routes and its petition to revoke Lake Central's certificate to such routes. It also filed an application to approve its acquisition of control of Lake Central.

On April 14, 1953, defendant filed with C.A.B. its "Opposition to Motions for Consolidation." In that document defendant 1) urged that Ozark's petition to revoke Lake Central's route certificate be dismissed outright; 2) stated its own route application was protective in nature and its consolidation into Docket 5770 was sought only "in the event that" the Ozark and Transport route applications were consolidated; 3) urged that none of the route applications, including its own, should be so consolidated; and 4) urged that the Transport and Ozark applications to be considered as potential purchasers of Lake Central's stock be not consolidated in Docket 5770.

On May 16, 1953, Roscoe Weesner wrote a letter to defendant claiming that defendant's filing of its route application was a breach of contract. This was the first time that any of the Weesners had made such a claim. Defendant's counsel replied under date of May 25, 1953, stating that North Central expected to fol-

low a course of action contemplated by the provisions of the contract. That it would insist that the Board first pass upon the acquisition application before giving any consideration to its new route application. Counsel stated "If, and only if, the Board denied the acquisition application would North Central expect to prosecute the application for the routes operated by Lake Central."

On July 9, 1953, C.A.B. issued its order on the consolidation requests. In that order C.A.B. 1) took note that defendant's application for the Lake Central routes was contingent on the consolidation into Docket 5770 of the Ozark and Transport route applications; 2) instituted and consolidated into Docket 5770 a general investigation to determine whether, and on what terms, defendant, Ozark and/or Transport should be permitted to acquire the Lake Central majority stock and whether, and upon what terms, defendant, Ozark and/or Transport should be permitted to acquire Lake Central's Route 88; and 3) denied consolidation of the various route and certificate revocation applications and petitions. This order was modified in October, 1953, to permit Transport to withdraw and Allegheny to take its place.

After the consolidation order of July 9, 1953, neither Ozark nor defendant dismissed their applications for Lake Central routes, and on October 27, 1954, pursuant to a motion by Allegheny, C.A.B. instituted a new investigation consolidating in Docket 5770 all outstanding applications of Allegheny, Ozark and defendant for the Lake Central routes. In that order, C.A.B. stated it had delayed renewing Lake Central's certificate to Route 88 because of concern over the economic feasibility of the route, and it extended Lake Central's certificate for one year to December 31, 1955 pending a decision in Docket 5770.

In May, 1955, Sec. 401 of the Act was amended directing that existing temporary route certificates be made permanent. Thereafter, on motion of defendant and plaintiffs, Docket 5770 and a re-

lated docket, were severed from the board investigation and other route applications and were heard separately.

During the period hereinbefore described, Lake Central was in desperate financial circumstances, and its right to serve Route 88 was subject to possible revocation at any time. However, defendant did not apply for nor seek suspension or revocation of Lake Central's route certificate; neither did it take any position against the renewal of Lake Central's certificate; and defendant's own application has never been heard.

Defendant acted promptly in the early stages of the proceeding in Docket 5770. However, the Weesners, during that period, were negotiating with other air lines and persons to sell the same Lake Central stock covered by their contract with defendant. At the prehearing conference on March 19, 1953, Ozark and Transport proposed to file applications to be considered as potential purchasers of the Lake Central stock. Bureau Counsel proposed a general investigation be instituted and consolidated into Docket 5770. Defendant's counsel objected and asked a prompt hearing on Docket 5770. Ozark then filed an application to be considered as a possible purchaser. Defendant opposed the consolidation into Docket 5770 of all route applications and all other purchase applications. Lake Central and the Weesners stated that they had no objection.

On July 9, 1953, C.A.B. issued the initial consolidation order which consolidated into Docket 5770 the general investigation to determine whether defendant, Ozark and/or Transport should be permitted to acquire Lake Central stock, and which should be permitted to acquire Lake Central route. The examiner fixed October 19, 1953 as the hearing date.

On August 6, 1953, defendant's counsel requested a resetting of the hearing date because a key witness would be unavailable on the date set. The witness was in Europe on a business and vacation trip. The C.A.B. examiner granted the request, and the hearing date was

set for November 30, 1953. Meanwhile Allegheny came into the case in place of Transport.

The Lake Central mail rate case was moving forward during this period, and conferences began in early November, 1953. On November 23, 1953, defendant made a second request for delay in the hearing date in Docket 5770, pointing out that the Lake Central mail case was going forward and the purchase price under the contract could not be determined until that order was released. The hearing examiner granted the request and reset the hearing for January 18, 1954.

On January 4, 1954, defendant's counsel again asked the hearing in Docket 5770 be postponed thirty days so that defendant might have the benefit of the Lake Central mail rate order. On January 6, 1954, defendant's counsel wrote that Allegheny and Ozark had no objection to the postponement. Weesner's counsel then filed an objection to the requested delay, arguing that the contract contemplated a decision in Docket 5770 before the mail rate order. The examiner postponed the hearing for approximately sixty days.

The Lake Central permanent mail order was issued on February 16, 1954. On February 25, 1954, the C.A.B. chairman wrote to defendant and to John Weesner asking if the parties desired to proceed with hearing in Docket 5770. Defendant answered it wished to go forward, and had no objection to a prompt setting of the matter for hearing. Weesner's counsel answered stating that they regarded the contract as breached, and they were exploring with other parties possible proposals to be submitted to C.A.B., and asking for a delay. The only breach claimed in this letter was based upon the filing by defendant of its route application.

Defendant's counsel attempted to obtain a prompt hearing in Docket 5770, but plaintiffs requested and obtained a delay. On August 26, 1954, plaintiffs filed a motion to dismiss defendant's application in Docket 5770 claiming among other things that defendant had unduly delayed the case. Defendant denied the charges and insisted upon an early hearing. Plaintiffs' motion to dismiss was denied by C.A.B. on October 27, 1954.

In June, 1955, Lake Central's certificate became permanent. Plaintiffs and defendant filed motions to sever Docket 5770 from the other consolidated dockets, and to set it for immediate hearing. A severance order was issued on July 18, 1955. The hearings commenced on November 8, 1955, and were completed on December 22, 1955. Plaintiffs' counsel asked for and obtained further delays for the purpose of filing briefs.

The decision of the trial court referred to the financial condition of defendant. On December 23, 1953, defendant filed a petition with C.A.B. for an increase in its temporary mail rates, urging that such increase was necessary in order for defendant to continue operating during the high operating cost and depressed traffic winter months. The mail rates contained an element of subsidy, and all local service carriers were, necessarily, subsidized while in an experimental state of existence. It is not denied by defendant that during a period when it requested and received three delays, its liabilities exceeded its assets. However, from April, 1954, defendant made a remarkable financial recovery.

The foregoing statement of facts is practically undisputed. Unfortunately, the lengthy statement is required because the District Court held the three delays requested by defendant, and defendant's application for the Lake Central's routes were breaches of defendant's contract with the Weesners, which relieved the plaintiffs from performance.

The District Court concluded that defendant's action in obtaining three delays in scheduled hearings prevented a decision by C.A.B. within the time contemplated by the parties. The Court found that defendant made such requests for delays because of its critical financial condition.

We can find nothing in the contract which could be construed as prohib-

iting defendant's requests for delay. This is significant inasmuch as Paragraph 8(d) of the contract specifically provided that the parties would use reasonable diligence and care in prosecuting to final conclusion the initial permanent mail rate case of Lake Central. There was no contract provision making the carrying out of the contract dependent upon the sequence with which C.A.B. decided the various issues before it. We hold that the requested delays in C.A.B. procedure which were entirely agreeable to C.A.B. and approved by it, did not constitute a breach of the contract here under consideration.

■ Apparently the principal ground relied on by the District Court as showing a breach of contract was that defendant filed an application for Lake Central routes. The Court quoted paragraph 19 which provides: "19. Nothing in this Agreement shall prevent Wisconsin Central Airlines [1] from applying for all or any part of the routes covered in the Lake Central Airlines Renewal Case, Docket No. 4034, in the event that the Board disapproves Wisconsin Central's acquisition of Seller's stock." ([1] Name was later changed to North Central Airlines, Inc.) The Court implied a condition that no route application could be filed *before* C.A.B. disapproved of defendant's acquisition of the Weesner's stock.

The construction of Paragraph 19 obviously depends on the qualifying phrase "in the event that the Board disapproves Wisconsin Central's acquisition of Seller's stock." We think the trial court erroneously construed that phrase as a limitation on the time when a route application could be filed. The language does not support the conclusion that the parties intended a prohibition against defendant filing a route application.

It is important to keep in mind the background circumstances that attended the making of the contract. The Weesners had to sell their stock because C.A.B. knew they had committed substantial violations of the Act. Their airline was, in fact, threatened with extinction. They could salvage their investment only if they could get the stock out of their hands. At the time the contract was made, no one had any assurance that Lake Central would be able to get continued operating authority over its routes.

Furthermore, defendant, time and again, made it clear that the filing of the route application was conditional. The Weesners had continued in their effort to interest other airlines in the purchase of the stock. Although defendant was insisting that Docket 5770 should go forward, it reached the reasonable conclusion that to protect its position it was required to have a route application on file. In fact, when the application was made the Weesners offered no objection, and the claim of breach of contract was an afterthought.

The trial court was of the opinion that defendant should have dismissed its route application but it could not safely do so unless the route applications of Ozark and Transport were likewise dismissed, and this was not done.

We do not fully understand the trial court's view that the filing of the route application by defendant had some adverse effect on the Weesners or the plaintiffs who succeeded to their interests. Clearly defendant's action could not have any effect that was not already caused by the prior Ozark and Transport applications for the Lake Central routes. Also, Ozark later filed a petition to cancel Lake Central's certificate. The fact stands out that defendant never attempted to use its route application in order to avoid its obligations under the contract but, on the contrary, always insisted that the contract should be performed.

We hold that the trial court was in error in finding that breaches of the contract on the part of defendant excused the plaintiffs from performance under that contract.

Reversed and remanded for further proceedings not inconsistent with this opinion.